### ZANE et al. v. CITIZENS' TRUST & SURETY CO.

#### (Circuit Court of Appeals, Third Circuit. September 18, 1902.)

#### No. 19.

1. PRINCIPAL AND SURETY—INDEMNIFYING BOND—LIABILITY—EXONERATION.

Plaintiff trust company contracted to indemnify M. against loss from the failure of Z. to erect certain houses on land sold by M. to Z. Z. gave a mortgage to M. to secure a part of the purchase price and money loaned to be used in the construction of the buildings, which money M. procured from S., assigning as security therefor the note and mortgage given by Z.; and, in order to secure the performance of the contract by Z., defendant executed a bond, sued on, for the benefit of the plaintiff surety company. *Held*, that the fact that plaintiff surety company executed its policy of indemnity to S., assignee of the mortgage, instead of to M., was no defense to the action on the bond given by defendant for loss sustained by Z.'s failure to erect the buildings, since such loss was in fact sustained in exoneration of its liability to M.

2. SAME—CONSOLIDATION OF COMPANIES—EFFECT.

Where a surety company was bound to indemnify against a contractor's failure to erect buildings, and took a bond from defendant to

secure such liability, the fact that plaintiff company thereafter transferred its assets to another company, the latter assuming its liabilities, and borrowed money from the latter with which to complete the buildings on the contractor's default, did not preclude it from enforcing defendant's liability on its bond.

3. SAME.

Where an indemnitor had taken a bond from defendant to secure its liability for the failure of a contractor to erect certain buildings, it was no defense to an action on defendant's bond for loss sustained by such indemnitor that, on the default of a subcontractor for preliminary work, he refused to acquiesce in the arrangement of the contractor for superseding such subcontractor; it not appearing that plaintiff had any right to interfere with such contractor, or that the subcontractor's default had any natural connection with the failure of the contractor to finally complete the buildings as agreed.

4. SAME—ACTIONS—INSTRUCTIONS.

Where an indemnitor for the construction of buildings by a contractor had taken a bond from defendant to secure its liability, and, on the contractor's default, plaintiff's agent went to defendant's agent, and requested defendant to proceed. and complete the buildings, which was refused, and the latter stated that, if the indemnitor believed he had a claim, to go ahead and finish the building, and present the claim, in an action on the bonds it was not error for the court to charge that the indemnitor's loss was incurred in completing the operations under the directions of the obligor, through its local agent.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania. For opinion below, see 113 Fed. 596.

S. Davis Page, for plaintiffs in error.

D. J. Myers, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and BRADFORD, District Judge.

ACHESON, Circuit Judge. This was an action brought by the Citizens' Trust & Surety Company, for use of the Union Surety & Guaranty Company, against Frank S. Zane and the National Surety Company, upon their bond, dated March 31, 1898, executed by Frank S. Zane as principal, and the National Surety Company as surety, whereby the obligors bound themselves jointly and severally to pay the sum of $6,400 to the Citizens' Trust & Surety Company. The bond contains the following recitals and condition:

"Whereas, the said Frank S. Zane has agreed to erect and build fifty-two two-story brick dwellings on the east and west sides of Wendell street (35 feet wide, extending from Clearfield street to Allegheny avenue), six two-story brick dwellings on the north side of Clearfield street, and six two-story brick dwellings on the south side of Allegheny avenue, in the Thirty-Third ward of the city of Philadelphia, according to certain plans and specifications prepared by William H. Free, architect, 1237 Arch street, Philadelphia, now lodged with the said the Citizens' Trust and Surety Company. And whereas, in and by a certain agreement, bearing date the ——— day of ———, A. D. 1898, by and between the said Frank S. Zane, the Citizens' Trust and Surety Company, John Meighan, and the Real Estate Title Insurance and Trust Company, wherein it was recited, inter alia, that the said John Meighan agreed to advance toward the erection and completion of said sixty-four buildings, and general expenses incident thereto, the sum of fifty-six thousand dollars; that the said sum was deposited with the Real Estate Title Insurance and Trust Company. And whereas, the said the Citizens' Trust and Surety Company have agreed to indemnify the said John Meighan against any loss

by reason of the noncompletion of the said buildings and the filing of mechanics' and municipal liens: Now, the condition of this obligation is such that if the said Frank S. Zane shall faithfully perform all the conditions and covenants in said bond, and shall fully complete said sixty-four buildings according to said plans and specifications, free of mechanics' and municipal liens, and pay the general expenses incident to said operation, then this obligation to be void, otherwise to remain in full force and effect."

At the trial of the case the evidence established the following stated facts: John Meighan sold and conveyed certain lots of ground in the city of Philadelphia to Frank S. Zane, who agreed to erect thereon 64 dwelling houses. Meighan agreed to advance to Zane, towards the erection of these houses, the sum of $56,000. To secure the proper application of the money, it was agreed that it should be deposited in the Real Estate Title Insurance & Trust Company to the credit of the building operation, and this was done. The Citizens' Trust & Surety Company agreed to indemnify "said John Meighan, his heirs and assigns," against loss by reason of the noncompletion of said 64 buildings, or of any liens that might be filed against the same by mechanics or materialmen. These several engagements are recited in the quadrilateral agreement which the bond in suit refers to. Zane executed to Meighan a mortgage on the 64 lots of ground for $87,300, to cover the purchase money thereof, namely, $31,300, and the above-mentioned advance of $56,000. Meighan borrowed from William Frederick Snyder the $56,000 upon his note for that amount, and, as collateral security for the same, assigned to Snyder the Zane mortgage. Frank S. Zane failed to complete the 64 buildings. On March 2, 1899, while the buildings were unfinished, Zane made an assignment for the benefit of creditors to D. S. Lindsay. Mechanics' liens to a large amount were filed against the buildings. The fund, namely, $56,000, specially deposited with the Real Estate Title Insurance & Trust Company, was all applied toward the 64 buildings, but was insufficient to defray their cost. The legal plaintiff, the Citizens' Trust & Surety Company, alleged, and claims to have given evidence at the trial to show, that by reason of the default by Frank S. Zane, and in compliance with its obligation to indemnify John Meighan, it was compelled to expend and did expend a sum of money in excess of the amount of the bond in suit to complete the said 64 buildings and free them from mechanics' liens, which money so expended it obtained from the use plaintiff, the Union Surety & Guaranty Company. There was a verdict in favor of the plaintiff for the amount of the bond and interest, and the court entered judgment for the plaintiff upon the verdict. 113 Fed. 596. To reverse this judgment, this writ of error was brought.

This record contains 33 assignments of error. We think, however, that it is not necessary for us to take them up seriatim, or to consider them separately. We prefer to follow the groupings of the assignments found in the brief of argument submitted by the counsel for the plaintiffs in error, and to treat the case with regard to the four fundamental propositions which in the brief stand at the head of the several groups of assignments, and which the counsel for the plaintiffs in error has particularly pressed upon our attention.

The first of these propositions is this:

"(1) The court below erroneously sustained the verdict on the assumption that the loss complained of was incurred in indemnifying Meighan, and not in exoneration of the plaintiff's policy of insurance to Snyder."

We are not able to accept the view here urged, nor can we give to the circumstance that the policy was issued to Snyder the effect claimed for it by the plaintiffs in error. The quadrilateral agreement mentioned in the bond in suit contains these two distinct recitals·

"And whereas, the said the Citizens' Trust and Surety Company, at the request of the said Frank S. Zane and John Meighan, hath agreed to indemnify the said John Meighan, his heirs and assigns, against all actual loss by reason of the noncompletion of said sixty-four buildings, or of any liens that might be filed against the same by the mechanics or material men furnishing labor or material in or about the construction thereof. And whereas, the said the Citizens' Trust and Surety Company hath agreed to so indemnify the said John Meighan, and issue its policy therefor, to the amount of eighty-seven thousand three hundred dollars, upon conditions, amongst other things, that the said sum of fifty-six thousand dollars should be so as aforesaid deposited, and in such manner that the same shall in no way be liable for the past, present, or future debts or engagements of the said Frank S. Zane, and shall be distributed and paid as hereinafter agreed."

From these recitals it is manifest that the Citizens' Trust & Surety Company was bound to indemnify Meighan from loss resulting from the noncompletion of the buildings, or from the filing of liens against them. The bond in suit recited this obligation thus: "And whereas, the said Citizens' Trust & Surety Company have agreed to indemnify the said John Meighan against any loss by reason of the noncompletion of the said buildings, and the filing of mechanics' and municipal liens;" and the expressed condition of the bond, upon the fulfillment of which it is to become void, is "if the said Frank S. Zane * * * shall fully complete said sixty-four buildings according to said plans and specifications, free of mechanics' and municipal liens, and pay the general expenses incident to the said operation." Now, notwithstanding the assignment to Snyder of the Zane mortgage, Meighan remained the real owner of the mortgage. The assignment was as collateral security for the loan of the $56,000 upon the note which Meighan had given Snyder. Undoubtedly then any loss thereafter occurring by reason of the failure of Zane to complete the buildings free from liens would fall upon Meighan. The issuing of the policy to Snyder did not extinguish the liability of the Citizens' Trust & Surety Company to indemnify Meighan. The money which that company expended was in performance of its legal obligation to Meighan, and not a voluntary payment. The loss here sued for clearly is within the scope and very terms of the bond given by the defendant below, Zane, and the National Surety Company, to the legal plaintiff, the Citizens' Trust & Surety Company. Upon the most careful examination of all the assignments of error under this head, we are not able to find in any of them ground for reversal. We may add that in our consideration of this branch of the case we have proceeded as if the policy issued to Snyder was in the case and before us for every purpose. In fact, however, when offered in evidence by the plaintiff below it was rejected as immaterial upon the objection and at the instance of the defendants.

117 F.—52

The second general proposition of the plaintiffs in error is this:

"(2) The loss complained of, whether incurred in indemnifying Meighan or in exoneration of the policy to Snyder, was sustained, not by the Citizens' Trust & Surety Company, but by the Union Surety & Guaranty Company, to whom the plaintiff in error owes no obligation under the bond in suit."

Upon an attentive examination of this record, we are satisfied that it furnishes a full answer to this proposition. The Union Surety & Guaranty Company, indeed, provided the money necessary to complete the building and discharge the liens after the exhaustion of the special deposit of $56,000. But under the proofs, charge of the court, and the verdict, it must be taken that the money so provided was advanced by the Union Surety & Guaranty Company to the Citizens' Trust & Surety Company. These two companies were and continued to be distinct corporations, notwithstanding the transfer of the assets of the Citizens' Trust & Surety Company to the Union Surety & Guaranty Company, and the assumption by the latter of the obligations of the former. There was no substitution of an obligee, either in fact or in law. The Citizens' Trust & Surety Company did not drop out of the transaction, but acted to the end in the performance of its engagement to Meighan. At its instance and request, and to enable it to perform its obligation to Meighan, the Union Surety & Guaranty Company advanced to it the necessary money. This must be accepted as the real transaction, under the evidence, charge of the court, and finding of the jury. We cannot sustain any of the specifications of error grouped under this head.

The third proposition urged by the plaintiffs in error is as follows:

"(3) The court erred in excluding testimony tending to show that the loss complained of would not have been incurred had the Citizens' Trust & Surety Company permitted the operator, Zane, to complete the work of the first defaulting contractor, as provided for under the terms of that particular contract."

We have examined the seven specifications of error grouped under this heading in connection with the offers of evidence appearing upon the record. The offers relate to the default of one Moore, a contractor for cellar work, which occurred very early in this building operation, to some arrangement proposed by Zane which involved the superseding of Moore in the conduct of the work, the refusal of the Citizens' Trust & Surety Company to permit what Zane proposed, and, as alleged, that "this inability to carry out the arrangements proposed produced the failure in the operation." We are constrained to say that the offers strike us as too vague. Besides, it did not appear in the offers or otherwise that the Citizens' Trust & Surety Company had any right to interfere with Zane in the matter proposed by him. Moreover, there was no necessary or natural connection between Moore's early default in cellar work and the ultimate failure of Zane to complete the buildings free of liens. The supposed connection was purely conjectural, and the rejected offers involved the mere opinions of witnesses upon the subject. We are of the opinion that none of the specifications under this head should be sustained.

The fourth general proposition of the plaintiffs in error is this:

"(4) The court below erroneously charged the jury that the loss complained of was incurred in completing the operation under the directions of the obligor, through its local agent in Philadelphia."

The specifications of error grouped under this head are the twenty-eighth, twenty-ninth, thirtieth, and thirty-first. They relate to that part of the charge of the court with reference to the authorization by the defendant the National Surety Company to the legal plaintiff, the Citizens' Trust & Surety Company, to complete the buildings after Zane's failure. Thomas B. Smith was the agent of the defendant company at Philadelphia having charge of its local office there. As to what occurred between himself and Mr. Cushing, representing the plaintiff company, Smith testified thus:

"Mr. Cushing complained that the assignee had no money to go ahead and complete the work, and they wanted us to go ahead and do it. My reply was that we would have nothing to do with it at that time. He said, 'Well, if you don't do it, we are going ahead and complete it, and charge it to your office.' It was a matter of indifference to me whether they did or did not; if they chose to do that, go ahead and do it; I didn't care anything about it. If they thought they had a claim. Well, he says, 'We'll have a claim against your company.' I says, 'If you think so, when you have concluded your labors present your claim.'"

We think that this testimony fairly warranted that portion of the charge here particularly complained of. While in relating what was said the witness used the personal pronoun, yet he must be understood as having spoken for the company he represented,—the National Surety Company. Besides, even in the absence of express authorization by the defendant company, the plaintiff company, under the facts, had the right to complete the contract of Zane upon the latter's default. Trust Co. v. Campbell, 184 Pa. 541, 544, 39 Atl. 291.

We think that this record is free from error, and accordingly the judgment is affirmed.